IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

LORETTA WILLHITE,           )
                            )
            Plaintiff,      )
                            )
      v.                    )      Case No. 05-3167-CV-S-NKL
                            )
JO ANNE B. BARNHART,        )
Commissioner of Social Security,   )
                            )
            Defendant.      )

## ORDER

Pending before the Court is Loretta Willhite's Motion for Summary Judgment

[Doc. # 8].  Willhite seeks judicial review of the Commissioner's denial of her request for

disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

The Court finds that the Administrative Law Judge's decision was supported by

substantial evidence in the record as a whole.

The complete facts and arguments are presented in the parties' briefs and will be

duplicated here only to the extent necessary.[1]  Following a review of the entire record, the

Court affirms the ALJ's decision.

## I.    Background

Willhite filed her application for benefits in January 2002, wherein she alleged a

---

[1] Upon review of the record and the law, the Defendant's position is found to be
persuasive.  Much of the Defendant's brief is adopted without quotation designated.

1

disability onset date of February 2001, at the age of 41.  In her application, Willhite alleged that her disabling impairments included bipolar disorder and depression.  (Tr. 50.)

Willhite's past relevant work experience includes jobs as a car hop, waitress, and housekeeper.  Willhite never earned in excess of $10,000 annually prior to filing her pending application.

### A.    Medical Treatments

#### 1.    Cox Medical Center North

Willhite was hospitalized for treatment at Cox Medical Center North ("Cox") from June 5, 2001, through June 14.  Upon her admission to Cox, Willhite reported high stress levels and weight loss for the month prior to her visit.  Dr. Tracy Kennetz initially evaluated Willhite and ordered a drug screen, lab work, and a thyroid profile.  Dr. Kennetz diagnosed Willhite with suicidal ideation and acute psychosis and transferred her care to Dr. Edgar Galinanes.

Dr. Galinanes observed that Willhite was confused and that her speech did not make sense at times.  Dr. Galinanes diagnosed Willhite with major depression with psychotic features and prescribed medication and group therapy.  (Tr. 106.)  On June 14, Dr. Galinanes filled out a discharge summary outlining Willhite's condition.  Dr. Galinanes noted that Willhite was medically and psychiatrically stable and she had no emotional problems or delusional thinking at the time of her discharge.  (Tr. 99-100.)  Willhite was prescribed Risperdal and Celexa and she did not report side effects from the drugs.  Willhite was diagnosed with major depression of a recurrent nature and

2

polysubstance abuse.[2]  Upon discharge, Dr. Galinanes determined that Willhite had a

global assessment functioning ("GAF") score of 70, which indicates mild symptoms.

### 2.    Omar Quadri, M.D.

Dr. Quadri consulted with Willhite on July 31, 2001.  At the examination, Willhite

reported that she had separated from her husband and that she was temporarily homeless,

although she had recently started a new job and she was saving money to rent an

apartment.  (Tr. 115.)  Willhite was well-groomed, polite, cooperative, and had good eye

contact.  She denied suicidal thoughts or hopeless feelings, but she did report a depressed

mood and she was tearful during the interview.  There was no psychosis and Willhite had

normal thought content.  Dr. Quadri diagnosed Willhite with bipolar affective disorder

without psychosis and alcohol, cannabis, and amphetamine abuse.

### 3.    Robyn Calvert[3]

Calvert consulted with Willhite on two separate occasions in March 2001.  The

first visit--on March 14--was unrelated to Willhite's psychological impairments.  In the

latter visit, Willhite was tearful, anxious, and depressed.  Calvert diagnosed Willhite with

depression and anxiety and prescribed her medications to reduce her anxiety.  (Tr. 120.)

Willhite was treated by Calvert again on May 22, 2001.  Calvert treated Willhite

for physical ailments unrelated to her psychological impairments.  However, she

continued to diagnose Willhite with anxiety.  (Tr. 119.)

---

[2]Willhite had admitted to using marijuana and amphetamines upon her admission to Cox.

[3]It appears from Defendant's brief that Calvert is a social worker.

On December 27, 2001, Willhite again consulted with Calvert. Willhite needed refills for her prescription medications and to develop a follow up care plan after her discharge from Cox. Willhite reported a decreased appetite and a desire to sleep all of the time. She also reported that her mood swings had "leveled off" and they were "better" although she still suffered from "a lot of lows." (Tr. 118.) Calvert diagnosed Willhite with bipolar disorder and prescribed her medications.

Willhite saw Calvert again on January 10, 2002. She reported that she was experiencing depression, she did not want to get out of bed, and she cries easily. Willhite also reported that she was irritable. Calvert renewed her diagnosis of bipolar disorder and stated that she would continue to monitor Willhite's medications. (Tr. 117.)

### 4. *Paul Iles, Psy.D.*

Dr. Iles, a licensed psychologist, conducted a disability evaluation for Willhite on April 11, 2002. Dr. Iles issued the following diagnosis:

| | |
|---|---|
| Axis I: | Bipolar disorder, recurrent, moderate severity<br>Panic disorder with agoraphobia<br>Polysubstance dependence, sustained in partial remission |
| Axis II: | Deferred |
| Axis III: | Tendonitis in right hand and right ankle |
| Axis IV: | Problems with primary support group<br>Occupational problems<br>Victim of abuse |

(Tr. 138.) In addition to the foregoing diagnosis, Dr. Iles assessed Willhite's GAF at 50-55 and he opined the following regarding Willhite's ability to work: (1) [Willhite] is able

4

to understand and remember moderately complex instructions; (2) [Willhite] is able to sustain concentration and persistence with simple and moderately complex tasks; (3) [Willhite] appears to be able to interact socially and adapt to her environment appropriately at this time; and (4) [Willhite] appears to have the judgment and mathematical skills to manage her own finances. (Tr. 138.)

### 5. Colleen Brill, MSN, RN, CS

Willhite met with Brill on March 11, 2002. Brill diagnosed Willhite with bipolar disorder and adjusted her medications. (Tr. 187.) Brill met with Willhite several times, but her diagnosis of bipolar disorder remained the same and she managed Willhite's medication regimen.

By May 2003, Willhite subjectively reported improvement in her condition. For example, she indicated that her energy level was "good" and that she was "not really feeling anxious and is not having panic attacks anymore." (Tr. 171.) Willhite also reported no problems with her daily living activities and that she "enjoys life." (Tr. 171.) Brill objectively reported that Willhite maintained eye contact and that she did not exhibit "odd or unusual behavior" and she did not manifest "pressured speech or flight of ideas during the session." (Tr. 171.)

### 6. Lester Bland, Psy. D.

Dr. Bland evaluated Willhite on behalf of the Commissioner. Dr. Bland opined that Willhite was mildly limited in the areas of daily living and maintaining social functioning. (Tr. 155.) He determined that she was moderately limited in her capacity to

maintain concentration, persistence, and pace.  (Tr. 155.)

### 7.    *Elizabeth Bhargava, M.D.*

On May 19, 2004--after the ALJ issued her decision but before the case had been affirmed by the Commissioner's Appeals Council--Dr. Bhargava completed a Medical Source Statement ("MSS") regarding Willhite's ability to work.  Dr. Bhargava opined that Willhite was markedly limited in her ability to (1) understand and remember detailed instructions; (2) maintain attention and concentration for extended periods; and (3) sustain an ordinary routine without special supervision.  (Tr. 197.)  Dr. Bhargava opined that Willhite was moderately limited in almost every other category on the MSS.  There are no medical records or objective explanations accompanying Dr. Bhargava's opinion and there is no evidence that Dr. Bhargava ever treated Willhite prior to submitting the MSS.

### B.    The Hearing

During the hearing, the ALJ called a vocational expert to testify.  The ALJ asked the vocational expert to consider a person of Willhite's background, including her education and age, and consider that the individual had the following impairments: bipolar disorder, a history of major depressive disorder with psychotic features, panic disorder with agoraphobia, diagnosis of polysubstance abuse, high blood pressure, and tendonitis in the right wrist.  The ALJ asked the expert to further consider that this individual could lift up to 20 pounds and carry no more than 10 pounds frequently during the day.  Also, the ALJ imposed the following limitations on the working conditions: the

6

need for a splint on the right wrist, a "low-stress" work environment that has only repetitive instructions, and no more than minimal contact with the public.

Based on this hypothetical, the vocational expert opined that the individual in the hypothetical could perform Willhite's past work as a housekeeper, which is classified as unskilled work performed at a light exertional level. The vocational expert ruled out Willhite's other previous jobs as a car hop and waitress because of the limitation of contact with the public.

The vocational expert further opined that if Willhite could not perform her past work as a housekeeper, then she could perform other unskilled work such as production assembler and small product assembler. The expert conceded that if the individual in the hypothetical had to sleep 2-3 times per day because of depression, then all work would be precluded. Moreover, if the individual in the hypothetical had trouble with speed, precision, accuracy, deadlines, and keeping up with work, then the person could not perform the jobs listed in the expert's response. Based on the vocational expert's response, the ALJ determined that Willhite was not entitled to benefits.

## II.     Discussion

### A.     Willhite's Credibility

Willhite first attacks the ALJ's ruling because she argues the ALJ improperly assessed her credibility. The ALJ discredited Willhite's subjective complaints about the extent of her ailments based on the objective medical evidence in the record, including Willhite's substantial improvement after her brief hospitalization in June 2001. The

records reflect that Willhite's condition improved substantially after her hospitalization and she began regularly taking medications. In fact, noticeably absent from Willhite's medical records is any indication that she was substantially impaired after June 2001. The only evidence to the contrary was offered by Dr. Bhargava, with whom Willhite does not appear to have had an ongoing patient-doctor relationship. Therefore, the ALJ's determination that the objective medical records did not support Willhite's subject complaints was supported by substantial evidence in the record.

The ALJ also relied on Willhite's poor work history as a basis for discrediting her subjective testimony. The unrefuted record reflects that Willhite's pre-application annual earnings never exceeded $10,000. This was a proper consideration by the ALJ and her decision is supported by substantial evidence in the record.

The only objective evidence Willhite relies on to support her subjective complaints is the report issued by Dr. Iles. Willhite states that Dr. Iles questioned her ability to work, but this was a passing comment made in the context of noting that Willhite was only moderately limited in several areas. Willhite also states that Dr. Iles "indicated that she was not functional for employment purposes" but Dr. Iles's report never makes such a conclusion. To the contrary, Dr. Iles's report suggests that Willhite has a GAF of 50-55, which reflects that she is functional, and his report indicates that she is only moderately limited in certain capabilities. Dr. Iles's side comments in his report do not sufficiently rebut the ALJ's findings, particularly when they are presented out of context.

**B.    The ALJ's Residual Functional Capacity ("RFC") Determination**

8

Willhite argues that the ALJ erred in determining her RFC because she did not properly make explicit findings as to the physical and mental demands of Willhite's past work experience, as required by *Groeper v. Sullivan*, 932 F.2d 1234 (8th Cir. 1991) and Social Security Rulings ("SSR") 82-61 and 82-62.

After evaluating Willhite's subjective complaints, the ALJ formulated Willhite's RFC at step four of the sequential evaluation process based on all the credible evidence in the record. First, the ALJ stated that she considered all of the "combination of impairments" when she considered them at step two of the five-step sequential evaluation process. Secondly, the ALJ explicitly found Willhite is capable, with some restrictions, of performing the exertional requirements of light work per 20 C.F.R. § 416.967(b), which states that a person capable of light work can occasionally lift twenty pounds and frequently lift up to ten pounds. Because the ALJ found that Willhite could perform the exertional requirements of light work with some restrictions, there was need for vocational expert testimony. The ALJ relied on that testimony to find that Willhite's RFC would allow her to perform the job of house cleaner, which she had previously performed. Furthermore, the vocational expert testified that Willhite could perform other jobs, including production assembler and small product assembler.

The transcript of the hearing indicates that the vocational expert methodically categorized the position of house cleaner as to exertional level and level of skill required. Additionally, the administrative record contains forms submitted by Willhite that detail the requirements of some of her past work. Thus, the ALJ had before her the necessary

9

information to determine that Willhite's past work did not exceed her RFC.  Accordingly,

the ALJ's determination is supported by substantial evidence in the record.

## III.    Conclusion

Accordingly, it is hereby

ORDERED that Willhite's Motion for Summary Judgment [Doc. # 8] is DENIED.

The decision of the Commissioner is affirmed.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE:  November 9, 2005
Jefferson City, Missouri

10